UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BOSSIER CITY MEDICAL SUITE, INC.
OF TEXAS D/B/A CAUSEWAY MEDICAL
CLINIC; ET AL

CIVIL ACTION

VERSUS

NO. 10-783-JJB-CN

BRUCE D. GREENSTEIN, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF THE LOUISIANA DEPARTMENT OF
HEALTH AND HOSPITALS

## RULING ON DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

This matter is before the Court on Defendant's motion (doc. 14) to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff has filed an opposition (doc. 23).[1] Oral argument is not necessary. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Court GRANTS Defendant's motion.

**I. Facts**

In 2001, the State of Louisiana enacted the Outpatient Abortion Facility Licensing Law ("OAFLL"), Acts 2001, No. 391, codified at La. Rev. Stat. Ann. §§ 40:2175.1 through 40:2175.6. The OAFLL authorizes the Louisiana Department of Health and Hospitals ("Department") to establish rules and regulations to

---

[1] On February 9, 2011, the Court granted (doc. 25) Defendant's motion (doc. 24) for extension of time to file a response to Plaintiff's opposition to Defendant's original motion to dismiss. Because the Court finds adequate reasons in Defendant's original motion for granting his motion to dismiss, Defendant need not file a reply.

1

provide for the health, safety and welfare of patients of outpatient abortion facilities. La. Rev. Stat. Ann. § 40:2175.2. The Department established such rules and regulations in mid-2003. *See* La. Admin. Code §§ 48:I.4401-4423.

### A. The initial regulations governing outpatient abortion facilities

Initially, the Department subjected outpatient abortion facilities to the same licensing and enforcement standards as those that applied to other health care facilities.[2] The OAFLL and the Department's regulations also initially applied the same procedures for suspending and revoking an outpatient abortion facility's license as apply to other health care facilities. First, the Department was permitted to "deny, suspend or revoke a license in any case in which [the Secretary] finds that there has been a *substantial failure* of the . . . licensee to comply with the . . . *rules, regulations and minimum standards adopted by the [Department]*." La. Rev. Stat. Ann. §§ 40:2110 & 40:2175.6[G] (emphasis added). Second, if the Department found "that public health, safety, or welfare imperatively require[d] emergency action," the Department could order "summary suspension of a license . . . pending proceedings for revocation." La. Rev. Stat. Ann. § 49:961. However, "prior to the institution of any agency proceedings," the

---

[2] A facility seeking an initial license is required to submit an application and licensing fee, after which the Department is required to inspect the premises and is directed to "issue a license if . . . it finds that the . . . facility meets the requirements established under the [OAFLL] and the licensing standards adopted in pursuance thereof." La. Rev. Stat. Ann. § 40:2175.6[C]. Facilities already in operation but not in compliance with the Department's regulations could receive a six-month provisional license. La. Rev. Stat. Ann. § 40:2175.6[E]. Moreover, "the deficiencies which preclude[d] the outpatient abortion facility from being in full compliance must [have been] cited at the time the provisional license [was] issued," thereby providing the facility with notice of the deficiencies and an opportunity to cure them. Once issued, a facility's license was valid for one year, unless revoked prior to that date, and had to be renewed annually. La. Rev. Stat. Ann. § 40:2175.4[C]-[D].

2

Department was required to provide "notice by mail to the licensee of the facts or conduct which warrant the intended action, and the licensee [must have received] an opportunity to show compliance with all lawful requirements for retention of the license." *Id.* Moreover, a facility whose license was revoked by the Department could appeal suspensively to an impartial three-member board, La. Rev. Stat. Ann. §§ 40:2110[B] & 40:2009.7[C], and could appeal suspensively the board's decision to the district court for the parish of East Baton Rouge, which would review the appeal *de novo*. La. Rev. Stat. Ann. § 40.2110[C].

### B. The regulations governing outpatient abortion facilities following the passage of Act 490

However, on June 22, 2010, the State of Louisiana enacted Act No. 490 ("Act 490"), which amended section 2175.6 of the OAFLL to remove the provision subjecting outpatient abortion facilities to the same standards as other health care facilities for license denial, revocation, suspension and appeals therefrom. The statute now states that "the secretary of the department may deny a license, may refuse to renew a license, or may revoke an existing license, if an investigation or survey determines that the application or license is in violation of *any* provision" of the regulations governing outpatient abortion facilities, "or in violation of *any federal or state law or regulation*." La. Rev. Stat. Ann. § 40:2175.6[G] (emphasis added). Absent is the language from the prior statute

3

requiring the Secretary to find a "substantial violation" prior to instituting suspension or revocation proceedings.

In addition, the Secretary "may issue an immediate suspension of a license if an investigation or survey determines that the . . . licensee is in violation of . . . the rules promulgated by the department or . . . any other federal or state law or regulation, and the secretary determines that the violation[s] pose an imminent or immediate threat to the health, welfare, or safety of a client or patient." La. Rev. Stat. Ann. § 40:2175.6[H]. If the secretary issues an immediate suspension of a license, the facility may file a *devolutive* appeal to an impartial three-member board or file for an injunction in the district court for East Baton Rouge Parish. La. Rev. Stat. Ann. § 40:2175.6[H](1)-(2). To qualify for injunctive relief, "the licensee shall prove by *clear and convincing evidence* that the secretary's decision to issue the immediate suspension of the license was *arbitrary and capricious*." La. Rev. Stat. Ann. § 40:2175.6[H](2). That is, an immediate suspension is no longer subject to *de novo* review.

Lastly, the statute as amended provides that "[i]f a license is revoked or renewal of a license is denied other than for cessation of business or non-operational status, or if the license is surrendered in lieu of an adverse action, any owner, officer, member, manager, director, or administrator of the licensee may be prohibited from owning, managing, directing, or operating another outpatient abortion clinic in the state of Louisiana." La. Rev. Stat. Ann. § 40:2175.6[I].

Moreover, Plaintiff claims that since the passage of the Act 490, the Department has changed its protocol for inspecting outpatient abortion facilities. Based upon an inspection and license revocation of non-party Hope Medical Group for Women ("Hope Medical") Plaintiff asserts that the Department now (1) issues deficiencies to facilities for failing to have procedures to assure compliance with unrelated statutes; (2) issues deficiencies for practices or procedures that the Department previously allowed; (3) applies statutes and regulations in inconsistent ways, thereby subjecting outpatient abortion facilities to arbitrary enforcement and inadequate notice of which procedures and practices the department finds acceptable.[3]

On November 17, 2010, Plaintiffs Bossier Medical Suite, Inc., Choice Inc. of Texas d/b/a Causeway Medical Clinic; Delta Clinic of Baton Rouge, Inc.; Midtown Medical, LLC, Women's Health Care Center, Inc. and John Doe, M.D., filed suit against Defendant Bruce D. Greenstein, Secretary of the Louisiana

---

[3] Prior to the passage of Act 490, the Department conducted unannounced inspections and upon discovering a violation, provided the facility with verbal and written notice of any deficiencies. In addition, facilities were permitted to submit a Plan of Correction, which if inadequate, would be returned by the Department with a letter explaining how the plan was inadequate. If the facility submitted an acceptable Plan of Correction within the designated time frame, the Department would take no further action with regards to the cited deficiencies. If the inspector discovered a deficiency which violated a provision and created an immediate threat of harm, the inspector would issue a Notification of Determination of Immediate Jeopardy ("NDIJ"). In such circumstances, the facility was instructed to submit a Plan of Correction while the inspector was still at the facility and to take immediate corrective action. Moreover, the Department would follow up with a written Statement of Deficiencies and a letter informing the facility of the deadline to achieve compliance.
       Following the passage of Act 490, the Department conducted an inspection of Hope Medical. The inspector concluded that the facility contained deficiencies that violated the law and posed immediate threat of harm to patients, and issued an NDIJ. Hope Medical immediately submitted a Plan of Correction, which was approved by the Department, and changed its practices to conform thereto. Three weeks after the inspection, the Department issued an immediate suspension of Hope Medical's license and began proceedings to permanently revoke the its license, despite not having provided a written Statement of Deficiencies or an opportunity for Hope Medical to submit a second Plan of Correction.

Department of Health and Hospitals (doc. 1). Plaintiffs seek a declaratory judgment that Act 490 is unconstitutional and a permanent injunction to prevent Defendant from enforcing the statute (doc. 1). Plaintiffs assert that Act 490 is unconstitutional because it (1) treats outpatient abortion facilities different than other medical facilities without a rational basis for doing so in violation of the Equal Protection Clause; (2) fails to give outpatient abortion facilities fair notice of the conditions of licensure and encourages arbitrary and discriminatory enforcement in violation of the Due Process Clause; (3) "deprives [outpatient abortion facilities] of liberty and property interests in an arbitrary, unreasonable and capricious manner and invests an impermissible degree of subjective discretion in the Secretary" in violation of substantive Due Process jurisprudence; (4) creates a substantial obstacle to patients of outpatient abortion facilities in violation of substantive Due Process jurisprudence (doc. 1).

On December 14, 2010, Defendant filed its motion to dismiss (doc. 14). Defendant asserts that Plaintiff's claims must be dismissed because (1) under Fed. R. Civ. P. 12(b)(1), Plaintiffs' claims are not yet ripe and because Plaintiffs lack standing; and (2) under Fed. R. Civ. P. 12(b)(6), Plaintiffs complaint fails to state a claim upon which relief can be granted (doc. 14).

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(1), a party may challenge a court's subject matter jurisdiction at any time. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). The burden of establishing the court's jurisdiction lies

with the party invoking the court's jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 1999). In determining whether it has subject matter jurisdiction, the court may look to the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.*

**III. Analysis**

Defendants assert that this Court lacks subject matter jurisdiction because Plaintiff's claims are not ripe. Defendants assert that Plaintiff's claims are not ripe, because Plaintiffs have not yet been—and may never be—refused licenses and have not been subject to revocation or suspension proceedings (doc. 14). In opposition, Plaintiffs assert that their claims are ripe because Act 490 will require them to make changes to their operations and because the state has already enforced Act 490 against another outpatient abortion facility which has created concrete effects capable of judicial review (doc 23).[4]

In order for a federal court to obtain jurisdiction over a dispute, the plaintiff's claim must be ripe for adjudication. *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989). The ripeness doctrine exists "to prevent courts, through avoidance of premature adjudication from entangling themselves in

---

[4] Plaintiff asserts that the Department's enforcement has (1) demonstrated its intent to "zealously enforce the Act;" (2) "signaled Defendant's adoption of the Zero Tolerance Policy, for the first time denying abortion facilities notice of alleged deficiencies and an opportunity to correct before taking action to suspend or revoke the license;" (3) "created reasonable fear" that the Department may search Plaintiffs' facilities and revoke or suspend their licenses without notice and an opportunity to correct them; and (4) "exposed Plaintiffs and their patients to irreparable injuries, including constitutional deprivations" (doc. 23).

abstract disagreements." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008). As such, when a party requests the court to review a law or regulation prior to its enforcement, the court typically must inquire into the ripeness of the dispute. *Id.*

A court "should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Lopez v. City of Houston*, 2010 WL 3341643 (5th Cir. 2010). The key factors in determining the ripeness of a dispute are (1) "the hardship to the parties of withholding court consideration;" and (2) "the fitness of the issues for judicial decision." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Parties may demonstrate sufficient hardship if they are required to make "immediate and significant change[s] in [their] conduct . . . with serious penalties attached to non-compliance." *Roark & Hardee LP v. City of Austin*, 522 F.3d 433, 445 (5th Cir. 2008). Moreover, whether an issue is fit for judicial decision depends upon the extent to which the issue presents purely legal questions. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987). If further factual development is necessary, a dispute is generally unripe. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). However, "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Cent. & Sw. Servs. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000).

The Court finds that the Plaintiffs will not suffer any significant hardship. Plaintiffs claim that they will suffer severe hardship because they will be required

to make "immediate and significant, but unascertainable, changes in their operations." However, nothing in Act 490 requires Plaintiffs to alter their conduct; instead, it alters the State's conduct in detecting and addressing violations. For instance, Act 490 permits the state to revoke or suspend a license for any violation of state or federal law, rather than a "substantial deviation." La. Rev. Stat. Ann. § 40:2175.6[G]. Though this provision potentially subjects Plaintiffs to a stricter standard of review for violations of state or federal law, Plaintiffs were legally obligated to adhere to those statutes and regulations notwithstanding Act 490. Thus, Act 490 will not require them to make any "immediate and significant changes" in their operations.

Moreover, none of the remaining provisions of Act 490 require the Plaintiffs to make any "immediate and significant changes." The provision granting outpatient abortion facilities only a devolutive appeal of a suspension or revocation, La. Rev. Stat. Ann. § 40:2175.6[H](1)-(2), does not require the Plaintiffs to make any "immediate or significant changes" to comply with Act 490. In fact, they do not require Plaintiff's to make *any* current changes. The same can be said for the provision subjecting outpatient abortion facilities to different standards of review when seeking an injunction, La. Rev. Stat. Ann. § 40:2175.6[H](2), or permitting the state to permanently ban individuals associated with outpatient abortion facilities that have had their licenses suspended or revoked, La. Rev. Stat. Ann. § 40:2175.6[I].

The Court also finds that the issues are not fit for judicial decision at the present time. Though Act 490 potentially authorizes the Department to refuse, revoke or suspend a license for violations of relatively insignificant statutes and regulations, as pointed out by Defendant, the state has not yet exercised its authority in such "Draconian" fashion. Moreover, it is pure speculation to say that Plaintiffs may one day be subject to the provisions in Act 490 of which they complain.

Plaintiff, however, asserts that the Department's conduct towards Hope Medical has (1) demonstrated its intent to "zealously enforce the Act;" (2) "signaled Defendant's adoption of the Zero Tolerance Policy, for the first time denying abortion facilities notice of alleged deficiencies and an opportunity to correct before taking action to suspend or revoke the license;" (3) "created reasonable fear" that the Department may search Plaintiffs' facilities and revoke or suspend their licenses without notice and an opportunity to correct deficiencies; and (4) "exposed Plaintiffs and their patients to irreparable injuries, including constitutional deprivations" (doc. 23). As to Plaintiff's first, second and third assertions, the Department's conduct towards Hope Medical is too isolated for this Court to determine whether the Department intends to "zealously enforce the Act," has established a "Zero Tolerance Policy" or whether Plaintiff's have a "reasonable fear" that the Department will engage in similar conduct. As to Plaintiff's fourth assertion, the Defendant's conduct towards Hope Medical only

establishes that Hope Medical—and not Plaintiffs—have arguably been "exposed . . . to irreparable injuries, including constitutional deprivations."

## **CONCLUSION**

Accordingly, the Court hereby GRANTS Defendant's motion (doc. 14) to dismiss.

Signed in Baton Rouge, Louisiana this 18th day of February, 2011.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**